# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

STEVEN BROWN,                                    Civil Action No. 1:12-cv-583

     Plaintiff,                                 Barrett, J.
                                                 Bowman, M.J

   vs.

DIRECTOR MOHR, *et al.*,

     Defendants.

## REPORT AND RECOMMENDATION

This civil rights action is now before the Court on a motion for summary judgment filed by Defendants (Doc. 170) and the parties' responsive memoranda. (Docs.191, 194).

### I. Background

Plaintiff is an inmate currently housed at the Ohio State Penitentiary in Chillicothe, Ohio. Plaintiff is proceeding *pro se*. In his original complaint, Plaintiff set forth constitutional claims pursuant to 42 U.S.C. § 1983 which can be grouped into three categories: (1) claims based on actions allegedly taken by Defendants in connection with a $5,000 settlement offer which Plaintiff claims he was "forced" to accept in a prior civil case before this Court, *Brown v. Voorhies*, et al., Case No. 1:07-cv-463 (S.D. Ohio) (Beckwith, J.; Bowman, M.J.); (2) claims challenging the conditions of confinement and incidents which allegedly occurred when Plaintiff was housed at Southern Ohio Correctional Facility ("SOCF"); and (3) claims based on the conditions of confinement and incidents which have allegedly taken place at Ross Correctional Institution ("RCI"). The claims in the first category were dismissed pursuant to the Prison Litigation and Reform Act of 1995, 28 U.S.C. § 1915A ("PLRA") for a failure to state a claim. The third category

of claims—those related to RCI—were severed and transferred to the Eastern Division of this Court for further proceedings. *See Brown v. Mohr, et al*, Case No. 2:13-cv-6 (Frost, J.; Kemp, M.J.). Only the second category of claims—those related to Plaintiff's confinement at SOCF—remain pending before this Court.

Namely, the issues in this case are limited to those arising during Plaintiff's incarceration at SOCF, and exclude anything addressed in *Brown v. Mohr,* et al, Case No. 2:13-cv-6 and *Brown v. Voorhies*, et al., Case No. 1:07-cv-463. (Doc. 124, Opinion and Order at 2, 8). [1] Plaintiff was confined to SOCF during the following periods relevant to this civil action: September 2, 2009 through January 18, 2011, again from April 6, 2011 through March 27, 2012, again September 13, 2012 through March 14, 2013, and again July 11, 2014 through December 23, 2014. (Doc. 170, Ex. E, Plaintiff's Institutional Movement History).

## II. Facts[2]

### A. Officer Riggs

Plaintiff alleges that on January 18, 2011, during Plaintiff's transfer from Lucasville Correctional Institution, Defendant Riggs punched him in the stomach while he was handcuffed. (Doc. 170, Defendants' Exhibit B, Plaintiff's Deposition, at pp. 26-29, 144-145; Compl. at ¶13).

Plaintiff grieved this issue to the Chief Inspector of DRC through the inmate administrative grievance system. (Doc. 171, Defendants' Exhibit F, Chief Inspector

---

[1] All other claims were ultimately dismissed for failure to state a claim for relief upon screening of the complaint pursuant to 42 U.S.C. (*See* Docs. 49, 124.)

[2] Due to the ambiguities of Plaintiff's cause of action and the generality of unrelated claims, Defendants motion for summary judgment addressed each defendant individually. In the interests of clarity, the undersigned will do the same.

Decision). The Chief Inspector denied Plaintiff's grievance making certain findings: the SOCF Inspector investigated the purported assault and conducted a telephone interview with Plaintiff. *Id.* Plaintiff told the inspector that Officer Riggs threw his typewriter and then punched him in the stomach causing him to double over onto the ground where he shouted that he could not breathe. *Id.* The inspector also interviewed the three officers present and "none of the officers reported using any force or witnessing any inmate being punching during the transport of 1/18/11." *Id.* The inspector interviewed five inmates, four of whom did not witness any force against Plaintiff. The fifth only "'assumed' [he] had been struck as [he] was lying on the bus floor but did not see any staff member strike [him]." *Id.* Plaintiff was examined by Ross Correctional Institution medical personnel upon his arrival that day and he denied having any medical complaints and was reported to be healthy without any sign of trauma or abuse. *Id.*

### B. Defendants Maryann Reese, Ryan Dolan, and Trevor Clark

Maryann Reese was the Assistant Attorney General assigned to represent Defendants in *Brown v. Voorhies* (hereinafter "Brown I") in the United States District Court for the Southern District of Ohio (1:07-cv-463). The court entered default judgment and awarded Plaintiff $375,000 dollars in damages. Plaintiff claims that Reese, in an attempt to settle the case, worked with the Ohio Department of Rehabilitation and Correction ("DRC") to force him to take a settlement of $5,000, which allowed him to speak to his dying mother. (Doc. 170, Ex. B. Plaintiff's Deposition at 63-70).

Plaintiff alleges that he provided Defendant Dolan with DVDs related to Brown I which were delivered to Judge Gregory Frost, but the DVDs that were returned to Plaintiff by the Court did not play properly. (Doc. 170, Ex. B. Plaintiff's Deposition at 76; Compl.

at ¶45). Further, Plaintiff alleges that Defendant Dolan was also responsible for forcing him to take a settlement in *Brown I*.

Plaintiff alleges that Trevor Clark attempted to settle Plaintiff's claims against ODRC in *Brown I*. As part of a separate settlement, ODRC agreed to transfer Plaintiff to a lower security prison in exchange for Plaintiff dismissing all of his claims against ODRC. (*Id.* at 78). However, Plaintiff refused to sign the agreement. (Doc. 170, Def. Exhibit B. Plaintiff's Deposition attached exhibit A Release Agreement). As a result, ODRC refused to lower Plaintiff's security classification or transfer him to the prison of his choice, instead sending him to Ross Correctional Institution. Plaintiff alleges that Defendant Clark must have done this in retaliation because he is employed by DRC. (Doc. 170, Def. Ex. B. Plaintiff's Deposition at 88).

### C. Defendants Stout and Trout

Defendants Stout and Trout are attorneys with ODRC whom are not involved in any of Plaintiff's litigation. (Doc. 170, Def. Ex. B. Plaintiff's Deposition at p. 90). Plaintiff states that he wrote Defendants Stout and Trout numerous letters regarding the alleged retaliatory acts carried out against him.

### D. Defendants Perdas, Bell, Kelly, Ison, and Cool

Plaintiff alleges that Defendants Perdas, Kell and Ison, are implicated in an excessive force claim. On May 13, 2011, Plaintiff was in the inmate visiting room with his attorney, Evan Price. (Doc. 170, *See* Defendants' Exhibits G, May 13, 2011 Use of Force Report Documents, and Exhibit H, May 13, 2011 RIB Documents). Officer Cooper, who is not a party, was stationed in the visiting room and called on his radio indicating medical personnel were needed. Correctional Officers Perdas and Ison also responded to the

scene. Plaintiff was escorted to the infirmary by other officers as well as Nurses Hall and Hankins who examined Plaintiff. Plaintiff indicated there was not a medical emergency, rather he just wanted something to eat. *Id.*

When the examination concluded, Officer Ison determined that Plaintiff needed to return to the block. Plaintiff was handcuffed and Officer Perdas walked with Plaintiff down the corridor until Plaintiff refused to move any further. Officer Perdas gave Plaintiff a direct order to continue moving, which Plaintiff refused. Officer Perdas then took ahold of Plaintiff's left arm to which Plaintiff immediately dropped to the ground began yelling "stop hurting me", which caused inmates to gather around the area thereby creating a prison disturbance. Officer Perdas picked Plaintiff up off the ground despite his continuous physical resistance. Eventually, Plaintiff stopped yelling and the escort continued, but then began yelling threats that he would inform his lawyer that they hurt him. He was instructed to stop shouting threats, which he ignored. He was then escorted to the holding cell with no additional force being used. Plaintiff was convicted of violating two prison rules of conduct during a Rules Infraction Board proceeding ("RIB") as a result of his behavior during the aforementioned escort. He was found guilty of committing Rule 20 and 21 of the Ohio Administrative Code § 5120-9-06, which are "Physical resistance to a direct order" and "disobedience of a direct order." His disposition was fifteen (15) days in disciplinary confinement. This disposition was affirmed by the Warden's independent review on appeal.  (Doc. 170, Def. Ex. H).

Plaintiff further claims that Defendants Bell and Cool were in the hallways near these events and did nothing. (Doc. 170, Def. Ex. B, Plaintiff's Deposition, at p. 81, 133; Compl. at ¶ 29).

*E. Defendants Bear, Kelly, Bell, and Voorhies*

Plaintiff's allegations against Defendants Bear, Kelly, Bell, and Voorhies revolve around an incident that took place in the SOCF cafeteria on November 18, 2010. According to Plaintiff, one day while getting food, the trays were mixed up, and the tray Plaintiff received belonged to another inmate. When he tried to get another tray, Defendant Shannon Bear refused to give him one. Plaintiff claims that when he complained, Defendant Bear rammed his head into a wall. (*Id*. at 93; Compl. at ¶10)

Plaintiff asserts that Officer Kelly and Bell somehow took part in this, either by assisting Officer Bear or by observing without intervention. Plaintiff further alleges that Defendant Voorhies witnessed Officer Bell's actions, and yet did nothing to prevent him from being placed in "the hole" despite his screaming for attention while he was taken to the hole for his actions in the cafeteria. (*Id*. at 102). Presumably, Plaintiff's alleges that Defendant' Voorhies failure to act resulted the alleged use of force by Defendant Bear.

A "Use of Force" investigation was conducted where six other witnesses, who are not parties to this action, provided accounts substantially different than the one by Plaintiff in his deposition. (*See* Defendants' Exhibits I, November 18, 2010 Use of Force Report Documents, and Exhibit J, November 18, 2010 RIB Documents).

Plaintiff was convicted of violating two prison rules of conduct during a RIB proceeding as a result of his behavior during the above episode. He was found guilty of committing Rule 27 and 18 of the Ohio Administrative Code § 5120-9-06, which are "giving false information or lying to departmental employees" and "encouraging or creating a disturbance." His disposition was fifteen (15) days in disciplinary confinement.

This disposition was affirmed by the Warden's independent review on appeal. (Doc. 170, Def. Ex. J).

### F. Defendant Morgan

Defendant Morgan was a Warden at SOCF. Plaintiff alleges that after Defendant Morgan gave him permission to have two containers for legal documents, instead of the standard one container, Defendant Morgan allegedly ordered the destruction of Plaintiff's legal documents. Plaintiff also alleges that all of his grievances for all of his issues were denied by Defendant Morgan. (Doc. 170, Ex. B, Plaintiff's Deposition at 113). Further, Plaintiff wishes to hold Defendant Morgan responsible for his legal mail not reaching its intended recipient.

### G. Defendant Green

Defendant Green was the Warden's Designee at SOCF. Plaintiff alleges that in his public record case, he produced an affidavit stating that he contacted Plaintiff to inform him that he would have to pay for the documents he requested, which Plaintiff claims was a lie amounting to perjury. (Id. at 120-123).

### H. Defendant Dillon

Defendant Dillon was a correctional Officer at SOCF. Defendant Dillon's involvement revolves around Plaintiff's transfer from SOCF to Toledo Correctional Institution. Plaintiff alleges that during his transfer, he was attempting to place his legal documents on a cart. (Id. at 123-124). Plaintiff claims that he informed Defendant Dillon of his inability to lift the legal documents onto the cart due to a herniated disc. (Id. at 124). Defendant Dillon made Plaintiff lift the documents, and as a result, Plaintiff alleges that he injured "something in [his] neck and back" and could not transfer from SOCF to Toledo

Correctional Institution and he would not permit others to help him lift the documents. (*Id.* at 124-125). However, per this Court's Opinion and Order, Document #124, all issues related to Defendant Dillion have been completely dismissed.

*I. Defendant Mahlman*

Defendant Mahlman was the assistant inspector at SOCF. Plaintiff alleges the extent of Defendant Mahlman's involvement in this suit is that she failed to provide him with favorable grievance determinations. (Id. at 128-131). Plaintiff believes that her findings on his grievances were not factually supported. (Id.).

*J. Defendant Cadogan*

Defendant Cadogan was the deputy warden of special services at SOCF. Plaintiff claims that Defendant Cadogan denied him kosher food, medical care, access to the courts, and permitted correctional officers to commit acts of retaliation in a supervisory capacity. (Doc. 170, Ex. B. Plaintiff's Deposition at 139). Plaintiff alleges that despite approval from the institutional chaplain and the "central office," SOCF failed to provide Plaintiff with kosher food.

When kosher food was provided, Plaintiff claims that he was required to wait up to an hour to receive his kosher food, and then when he was transferred to 4B, they refused to provide him with a meal, resulting in a hunger strike for three weeks by Plaintiff. (Id. at 140). When he filed grievances on the issue, Plaintiff claims that Defendant Cadogan refused to address his issue. (Id.).

Plaintiff also alleges that Defendant Cadogan oversaw medical and dental at SOCF (Id. at 141). Thus, Plaintiff seeks to hold Defendant Cadogan responsible for his inability to receive dentures while he was at SOCF after his dentures were taken from him

while he was being held at a county jail. (*Id.*). Plaintiff also alleges that Defendant Cadogan retaliated against him by preventing his access to the SOCF law library. (Id. at 143). Plaintiff claims that Defendant Cadogan oversaw the law library, and while he was in 4B, he did not give him case law or make copies of documents for him for free. (Id). Plaintiff feels that his rights were violated because 4B inmates were prevented from accessing the law library directly. (*Id.* at 143-144).

### K. Defendant Messer

Defendant Messer was the Sergeant of Plaintiff's cell block. Plaintiff alleges that Defendant Messer withheld and destroyed Plaintiff's legal documents, such as Dr. Ahmed's personnel record from the State Medical Board, constituting retaliation. (Doc. 170, Def. Ex. B, Plaintiff's Deposition, pp. 148-153; Compl. at ¶ 97). However, Plaintiff later states he was permitted to review Dr. Ahmed's personnel record. (*Id.* at 151). Further, Plaintiff alleges that he did not provide him with a working computer to prepare legal documents in *Brown v. Voorhies* (*Id.* at 152). Additionally, Plaintiff claims that Defendant Messer purposefully mixed up his legal documents delaying his filings in *Brown v. Voorhies* (*Id.* at 150).

### L. Defendant Hunt

Defendant Hunt was the Sergeant in charge of the property room at SOCF. (Id. at 153). In *Brown I*, Trevor Clark and Ryan Dolan arranged for Plaintiff to have two tubs of legal documents rather than the standard one tub which were stored in Defendant Hunt's office. (Id. at 153-157). The documents which were stored in his office had been dumped and mixed together, and Plaintiff alleges that after he attempted to sort the documents,

Defendant Hunt dumped them back on the floor and kicked the papers all over the room causing his documents to be in disarray. (*Id.* at 155; Compl. at ¶35).

### M. Defendant Goodman

Defendant Goodman was an institutional inspector at SOCF. (Doc. 170, Def. Ex. B, Plaintiff's Deposition, p. 159). Plaintiff believes that Defendant Goodman is responsible for his unfavorable grievance determinations. Further, Plaintiff accuses Defendant Goodman of being responsible for his time "in the hole," which Plaintiff claims prevented him from filing in *Brown I*. However, Plaintiff openly admits he has no proof whatsoever of Defendant Goodman's involvement. (*Id.* at 164).

### N. Defendant Mohr

Defendant Gary Mohr is the Director of ODRC. Plaintiff claims to have written Defendant Mohr letters regarding the issues he was facing at SOCF. (*Id.* at 135). Plaintiff alleges that it was Defendant Mohr's duty to supervise the actions of SOCF's employees. (*Id.* at 137). However, Plaintiff admits that Defendant Mohr sent an assistant director to SOCF to interview Plaintiff and investigate the issues he claims to have faced. (*Id.* at 135). Further, Plaintiff seeks to challenge ODRC policies, which he holds Gary Mohr personally responsible. However, he fails to state the policies he specifically wishes to challenge. (*Id.* at 137).

### O. Defendant Eddy

Defendant Eddy is the medical director at ODRC. Plaintiff states that Defendant Eddy has reviewed his medical records but has never met or been personally examined by Defendant Eddy. Plaintiff generally alleges that Defendant Eddy is responsible for cutting the drugs available in the formulary, replacing institutional doctors with nurse

practitioners, creating a collegiate review process before specialist care is provided, and requiring inmates to pay for over-the-counter medications, constituting deliberate indifference. (*Id.* at 168-169). Plaintiff alleges that the collegiate review process prevented him from being able to see a number of specialists including ones for hematology, diabetes, rheumatology (arthritis), an ENT (ears, nose, throat), etc. (*Id.* at 169).

Plaintiff also alleges that Defendant Eddy removed drugs from the formulary such as niacin, an over-the-counter vitamin, and replaced them with prescription drugs, like Lipitor. (*Id.* at 170).

Plaintiff further alleges that Dr. Eddy interfered with his actual medical treatment in the following manners: 1) Eddy's alleged discontinuation of Plaintiff's Neurontin medication in 2008 (p. 35); 2) Eddy's alleged denial of a Rheumatology appointment on April 23, 2013 (pp. 35-36); 3) Eddy allegedly instituting a system-wide discontinuation of pain medications including Ultram and Neurontin in 2009 (p.53); 4) Eddy allegedly cancelled "hematology, oncology, colonoscopy and rheumatology" appointments on either April 23, 2013 or May 30, 2013 (p.56); 5) Eddy's alleged denial, through Healthcare Administrator Lisa Bethel, of a CPAP machine and potentially regarding ADA issues on November 15, 2013, 6) Eddy's alleged cancellation of a recommended surgery for his orbital fracture on December 19, 2012; and 7) Eddy's alleged denial of a low salt kosher diet in 2011.

### P. Conditions of Confinement

Plaintiff further appears to challenge the conditions of confinement he faced while serving time at SOCF. Plaintiff stated that he is challenging the "totality of condition[s]" at SOCF, which constitutes a violation of the Eighth Amendment ban on cruel and unusual

punishment. (*Id.* at 24-25). Plaintiff states that his claim is for himself and similarly-situated individuals and occurred during the entirety of his stay at SOCF. (Id. at 25). Plaintiff states that the extent of this challenge is to the items described in paragraph 12 of the Complaint. (*Id.* at 25-26). Plaintiff states in the Complaint that the issues include: unsanitary conditions, excessive noise, lack of exercise, small open cells, lack of ADA accommodations, limited use of telephones, no legal calls, no law or regular law library access, lack of religious services, cold food and inadequate portions, limited mental health care, limited programming, limited visitation, limited commissary access, lack of protection from insane inmates, retaliation, and limited shower access. (Compl. at ¶12)

## II. Analysis

### A. Standard of Review

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 24748, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the action. *Celotex Corp.,* 477 U.S. at 323.

In response to a properly supported summary judgment motion, the non-moving party "'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.'" *Harris v. Adams,* 873 F.2d 929, 931 (6th Cir.1989) (quoting *Sixty Ivy Street Corp. v. Alexander,*

822 F.2d 1432, 1435 (6th Cir.1987)). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Satterfield v. Tennessee,* 295 F.3d 611, 615 (6th Cir. 2002); *Little Caesar Enterprises, Inc. v. OPPC, LLC,* 219 F.3d 547, 551 (6th Cir. 2000).

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a *prima facie* case, summary judgment is warranted. *Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)* (citing *Celotex* and *Anderson*). A principal purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex,* 477 U.S. at 323–24. The moving party need not support its motion with evidence disproving the opposing party's claims. Rather, the moving party need only point out there is an absence of evidence supporting such claims. *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir.1996) (citing *Celotex Corp.,* 477 U.S. at 325). Nor must the Court search the entire record for material issues of fact. *Street,* 886 F.2d at 1479–80. The court need only determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial,* 475 U.S. at 599.

In this case, Plaintiff has failed to present anything more than his own conclusory allegations in support of his claims. Notably, the majority of Plaintiff's memorandum in opposition to Defendants' motion for summary judgment details the facts related to

Plaintiff's underlying criminal charges, subsequent trial and conviction. (Doc. 190, pp. 11-18).[3] Plaintiff's allegations fail to create any genuine issue of material fact because the most critical allegations are refuted by evidence filed of record. Plaintiff's response in opposition to Defendants' motions fails to persuade, because although he offers new allegations, those allegations are conclusory and unsupported, and in virtually every instance are contradicted by record evidence offered by the Defendants. Conclusory allegations, standing alone, are insufficient to demonstrate a genuine issue for trial. As such, Defendants well-supported motion for summary judgment is well-taken and should be granted. Nonetheless, Plaintiff's claims against the individual defendants will also be addressed on the merits.

### B. 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States and (2) that the deprivation was caused by a person acting under color of state law. *Sigley v. City of Parma Hts.,* 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins,* 487 U.S. 42, 48 (1988)).

For the reasons that follow, the undersigned finds that Plaintiff has failed to establish any violation of his constitutional rights.

---

[3] Notably, Plaintiff's opposition memorandum contains 20 handwritten pages. On page 19, Plaintiff asserts that he could not finish his response due to health problems and asks the Court for an additional 30 days to supplement his filing. (Doc. 190 at 19). Despite being previous granted countless extensions, the Court granted Plaintiff an additional 60 days, until June 29, 2018 in which to supplement his response. The court further noted that "[n]o further extensions will be granted, period. Any request will be denied immediately." (Doc. 178). Thereafter, on June 29, 2018, Plaintiff filed an additional motion for an extension of time to file a response to Defendants motion for summary judgment. That motion is not well-taken and is denied per the Court's prior Order.

*1. Officer Riggs*

As detailed above, Plaintiff alleges that Officer Riggs punched him in the stomach. (Doc. 170, Defendants' Ex. B, Plaintiff's Dep., at pp. 26-29, 144-145; Compl. at ¶13). Notably, however, the evidence indicates that the Chief Inspector found that Plaintiff presented no identifiable injury following the alleged punch by Officer Riggs on January 18, 2011 when he was transferred to RCI. The Chief Inspector also found that not one of the six non-party witnesses interviewed saw Officer Riggs use any force at all against him. One single witness only attests that he assumed Plaintiff was struck because he saw him lying on the floor of the bus. Plaintiff insists he has witnesses who corroborate his contested account. The institutional inspector found no evidence of excessive force used by Officer Riggs. In addition, Plaintiff was examined by medical personal upon his arrival at RCI. He denied any medical issues and was reported to be healthy with no signs of injury or trauma.

Prisoners are protected from the use of excessive force by the Eighth Amendment. *Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). The Eighth Amendment standard focuses on the official's "obduracy and wantonness" and asks "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 319–21. The test for whether the use of force violates the Eighth Amendment requires a court to determine if the defendant's conduct caused the "unnecessary and wanton infliction of pain." *Moore v. Holbrook,* 2 F.3d 697, 700 (6th Cir. 1993) (citation omitted). In other words, [t]o ascertain whether excessive force was used under the

Eighth Amendment, the court must determine whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Such a claim has both an objective and a subjective component. The objective component requires that the pain be serious. The subjective component requires that the offending, non-penal conduct be wanton. *Griffin v. Hardrick,* 604 F.3d 949, 953–54 (6th Cir. 2010) (quoting *Watkins,* 1996 WL 499094, at *2 (citations omitted)).

The Eighth Amendment's prohibition of "cruel and unusual" punishments also necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. 9–10 (quoting *Whitley*, 475 U.S. at 327).

Plaintiff has failed to produce any evidence in support of his assertion that officer Riggs punched him in the stomach.  As such, Officer Riggs is entitled to judgment as a matter of law.

*2. Defendants Perdas, Bell, Kelly, Ison, and Cool are entitled to judgment as a matter of law*

On May 13, 2011, after an incident in the visiting room, Plaintiff was escorted to the infirmary. Correctional Officers Perdas and Ison also responded to the scene. Plaintiff was shouting and failing to obey orders.  Plaintiff alleges that Officer Perdas grabbed his arm while being escorted down the corridor. And also picked him up after Plaintiff fell to the ground.  Plaintiff claims that Defendants Bell and Cool were in the hallways near these events and did nothing. (Doc. 170, Def. Ex. B, Plaintiff's Deposition, at p. 81, 133; Compl. at ¶ 29). Plaintiff's claims are unavailing.

It is well established that "[p]rison officials may use appropriate force to regain control of an aggressive inmate." *Cordell v. McKinney*, 759 F.3d 573 (6th Cir. 2014).

"[T]he good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment." *Parris v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986). Here, Plaintiff has provided no evidence that Defendants *de minimus* use of force was not reasonable under the circumstances. Thus, Defendants are entitled to judgment in this respect.

### 3. Defendants Bear, Kelly, Bell, and Voorhies

As detailed above, Plaintiff's allegations against Defendants Bear, Kelly, Bell and Voorhies revolve around an incident in the SOCF cafeteria on November 18, 2010, wherein Plaintiff claims that he received the incorrect food tray. Plaintiff alleges that Defendant Bear refused to give him a new tray and, after he complained, rammed his head into the wall. Plaintiff contends that Officers Kelly and Bell either assisted Bear and/or did nothing to stop him. Plaintiff further alleges that Defendant Voorhies witnessed the incident but did nothing to prevent him from being placed in the hole.

Defendants, however, contend that all available evidence establishes that Plaintiff was shouting at correctional officers and disobeying orders, and was likewise convicted of rule violations, when Bear employed reasonable force to control Plaintiff who then collapsed to the ground without reason. As detailed above, Officer Bear is permitted to exercise some force against disobedient inmates causing a disturbance, like plaintiff. See *Hudson*, 503 U.S. 9–10 (quoting *Whitley*, 475 U.S. at 327) (The Eighth Amendment's prohibition of "cruel and unusual" punishments also necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'").

Here, a use of force investigation was conducted where six other witnesses, who are not parties to this action, provided accounts substantially different than the one provided by Plaintiff in his deposition. (*See* Doc. 170, Defendants' Exhibits I, November 18, 2010 Use of Force Report Documents, and Exhibit J, November 18, 2010 RIB Documents). Plaintiff was convicted of violating two prison rules of conduct during a RIB proceeding as a result of his behavior during the above episode. Defendants' are therefore entitled to judgment.

### 4. Defendants Reese, Dolan, and Clark

Defendants Reese, Dolan and Clark are all attorneys that represented the Ohio Department of Rehabilitation and Corrections ("ODRC") in different capacities during the series of events leading up to the present cause of action.

With respect to Defendant Reese, Plaintiff appears to assert that she violated his constitutional rights in some way in her role as counsel for ODRC in *Brown v. Voorhies,* No. 1:07-cv-463, S.D. Ohio. Plaintiff, however, fails to identify facts relating to Reese's alleged violation of his rights, nor does Plaintiff identify which rights he believes were violated by Reese. As such, Defendant is entitled to judgment as a matter of law with respect to Plaintiff's claim against Reese.

Similarly, Plaintiff's claims against Defendant Dolan are based, in part, on Defendant Dolan's involvement in settlement negotiations in *Brown v. Voorhies*, No. 1:07-cv-463, S.D. Ohio. Again, Plaintiff has provided no evidence that Defendant Dolan violated any of Plaintiff's constitutional rights by negotiating a monetary settlement on behalf of ODRC.

Plaintiff further alleges that Defendant Dolan impeded his access to the courts in violation of his First Amendment rights. In his deposition Plaintiff stated "[Defendant Dolan] was ordered to copy these DVDs and give me back the originals. Well, he gave the originals to Judge Frost and gave me these bogus ones back that don't play." (Doc. 170, Def. Ex. B, p. 73, lines 13-17).[4]

It is well established that prisoners have a constitutional right of access to the courts under the First and Fourteenth Amendments of the Constitution. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). However, an inmate must show that any barrier that impeded his access to the courts caused actual injury in his pursuit of a legal claim. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 U.S. App. LEXIS 34257, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994).

Plaintiff has failed to put forth any evidence that he has been adversely affected or prejudiced by Defendant Dolan's actions. To the contrary, Plaintiff admits "[Defendant Dolan] gave the originals to Judge Frost." (Doc. 170, Def. Ex. B, p. 73, lines 15-16). Accordingly, Plaintiff's claims against Defendant Dolan fail as a matter of law.

Last, Defendant Clark is an attorney that works at ODRC. With respect to Defendant Clark, Plaintiff alleges that Defendant Clark retaliated against him in violation of his First Amendment rights after Plaintiff refused to sign a form titled "Agreement, Acknowledgement and Release" (hereinafter "Agreement") (Doc. 170, Def. Ex. B, Deposition Exh. A) that would lower his security classification. Plaintiff claims that after

---

[4] Plaintiff is purportedly referencing *Brown v. Voorhies*, No. 2:07-cv-0013, S.D. Ohio. (See Doc. 289, indicating that the Court received the original and two copies of CD's, and that copies were distributed to the plaintiff and defendant.).

he refused to sign the agreement, "they sent [him] to a Level 3 at Ross. . . " (Doc. 170,Def. Ex. B, p. 86, Lines 19-20).

As outlined by Defendants, at the time Plaintiff refused to sign the Agreement, he was a level 4A security classification. (Def. Ex. B, Deposition Exh. A). The Agreement stated that Plaintiff would be placed at Warren Correctional Institution if he signed the Agreement. *Id.* However, Plaintiff did not sign this agreement. On March 14, 2013, ODRC transferred Plaintiff to Ross Correctional Institution, an institution for level 3 inmates. (Doc. 170, Def. Ex. E, Move History).  ODRC Policy 53-CLS-01(IV)(C) sets out the procedure for inmate security classification changes. The decision is initially made by at least one member of the classification committee. 53-CLS-01(IV)(C)(4). It is then sent to the managing officer/designee before then being sent to the Bureau of Classification and Reception ("BOCR") if an inmate is being lowered from Level 3 or 4. 53-CLS-01(IV)(C)(6-7).

To state a claim retaliation under the First Amendment, Plaintiff must establish the following: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 2000)).

Plaintiff has produced no evidence or argument that Defendant Clark was involved in any classification or placement decision relating to Plaintiff, nor that such action was retaliatory.

5. *Defendants Stout and Trout*

Plaintiff alleges that "[he] wrote [Defendant Stout] countless letters about being retaliated against, about the destruction of my property, and he responded to my letters and did nothing." (Doc. 170, Def. Ex. B, p. 88, Lines 8-11). Similarly, Plaintiff alleges that he wrote Defendant Trout letters in an attempt to remedy alleged misconduct occurring at the institutions. (Doc. 170, Def. Ex. B, p. 91, Line 21 – p. 92, Line 18). Such allegations however, fail to show that Plaintiff's rights were violated.

As noted by Defendants, prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged [unconstitutional] behavior'" cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Nor does a prison official's alleged failure to adequately investigate claims of misconduct rise to the level of "encouragement" that would make the official liable for such misconduct. *Knop v. Johnson*, 977 F.2d 996, 1014 (6th Cir. 1992); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, Defendants' are entitled to judgment.

*6. Defendants Reese, Dolan, Clark, Stout, Trout, Mohr, and Voorhees*

To the extent that Plaintiff is bringing claims against these defendants for retaliation, such claims have been dismissed. (See Doc. 124; dismissing Plaintiff's retaliation claims stemming from actions taken in *Brown v. Voorhies*, et al., Case No. 1:07-cv-463 (S.D. Ohio)(Beckwith, J.; Bowman, M.J.)). As discussed above, Plaintiff's allegations against Reese and Dolan stem from their involvement in the prior civil lawsuit. Additionally, the Court dismissed Defendants Mohr, Clark, Trout, Stout, Dolan, and Voorhies to the extent that the allegations overlap with Case No. 2:13-cv-06 (S.D. Ohio)(Frost, J.; Kemp, M.J.). In Plaintiff's Third Amended Complaint in 2:13-cv-06 (Doc.

#: 132), Plaintiff makes the same allegations against Defendants Mohr, Clark, Trout, Stout, Dolan, and Voorhies that he makes in the present complaint. (See 2:13-cv-06, Doc. #: 132, PageID #: 1108-1109, ¶¶ 20-21; PageID #: 1120-1121, ¶¶ 47-48; PageID #: 1128, ¶ 36; PageID #: 1130, ¶ 41). Accordingly, Defendants are entitled to judgment as a matter of law with respect to these claims.

### 7. Defendant Mohr

Plaintiff alleges that Defendant Mohr's policies are unconstitutional (Doc. 170, Def. Ex. B, Plaintiff's Deposition, p. 137, Lines 7-8) and brings claims against him for "failure to supervise. (*Id.* at Line 13). Further, he contends that Defendant Mohr is "responsible for the harm that's caused by these policies and food and medical care." (*Id.* at p. 138, Lines 6-8). Essentially, it is alleged that Defendant Mohr is liable because he is the Director of ODRC.

It is well-settled that the doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto supervisory personnel. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Hill v. Marshall*, 962 F.2d 1209, 1213 (6th Cir. 1992). Plaintiff's only allegations against Defendant Mohr are that he oversees the operations of ODRC as a whole. However, Defendant Mohr is not liable under § 1983 for his role as a supervisor as a matter of law. Thus, he is entitled to judgment.

### 8. *Defendant Messer*

Plaintiff contends that Defendant Messer violated his First Amendment right to access the courts when he allegedly destroyed his legal papers, refused to give him legal

papers, refused to give him legal mail, and only gave him access to a broken computer to respond to summary judgment in *Brown v. Voorhies*, No. 2:07-cv-0013, S.D. Ohio. As detailed above, it is well established that prisoners have a constitutional right of access to the courts under the First and Fourteenth Amendments of the Constitution. *Bounds*, 430 U.S. at 821. However, to state a claim, an inmate must show that any barrier that impeded his access to the courts caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351 (1996). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 U.S. App. LEXIS 34257, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994).

Here, it appears that Plaintiff claims that Messer's actions prevented him from responding to or filing for summary judgment in *Brown v. Voorhies*, No. 2:07-cv-0013, S.D. Ohio. In that case, Defendants filed for summary judgment on November 30, 2011. (Doc. #: 275). Plaintiff claims that Messer allegedly destroyed his legal papers on December 7, 2011. (Doc. 170 Def. Ex. C, Informal Complaint). The record however, indicates that Plaintiff filed 15 documents with the Court between November 30, 2011, when Defendants filed for summary judgment, and March 30, 2012, when the Court granted Defendant's motion for summary judgment. (*See* Civil Docket, No. 2:07- cv-0013, S.D. Ohio). Accordingly, Plaintiff has failed to produce any evidence that Defendant Messer impeded his access to the courts in that actions. As such, Defendant Messer is entitled to judgment as a matter of law.

9. *Defendant Goodman*

Defendant Goodman was an institutional inspector at SOCF. (Def. Ex. B, p. 159). Plaintiff contends that Defendant Goodman is responsible for unfavorable grievance

determinations and placing him "in the hole," which prevented him from filing briefs in *Brown* I. However, as detailed above, prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged [unconstitutional] behavior'" cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Nor does a prison official's alleged failure to adequately investigate claims of misconduct rise to the level of "encouragement" that would make the official liable for such misconduct. *Knop v. Johnson*, 977 F.2d 996, 1014 (6th Cir. 1992); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, Goodman is entitled to judgment.

        10. *Dr. Eddy*

        As noted above, Plaintiff brings claims against Dr. Eddy for denial and/or interference with his medical care. Namely, Plaintiff identified seven instances in which Dr. Eddy allegedly interfered with his actual medical treatment (Def. Ex. B, Plaintiff's Deposition): 1) Eddy's alleged discontinuation of Plaintiff's Neurontin medication in 2008 (p. 35), 2) Eddy's alleged denial of a Rheumatology appointment on April 23, 2013 (pp. 35-36), 3) Eddy allegedly instituting a system-wide discontinuation of pain medications including Ultram and Neurontin in 2009 (p.53), 4) Eddy allegedly cancelled "hematology, oncology, colonoscopy and rheumatology" appointments on either April 23, 2013 or May 30, 2013 (p.56), 5) Eddy's alleged denial through Healthcare Administrator Lisa Bethel for CPAP machine and potentially regarding ADA issues on November 15, 2013, 6) Eddy's alleged cancellation of a recommended surgery for Plaintiff's orbital fracture on December 19, 2012, and 7) Eddy's alleged denial of a low salt kosher diet in 2011.[5]

---

[5] Notably, Plaintiff's instant action is limited to claims that occurred while he was confined to SOCF. (Doc. 124, PageID # 850). Plaintiff was only confined to SOCF during the following periods relevant to this civil

Plaintiff makes a broad-sweeping claim that a policy requiring non-indigent inmates to pay for over the counter medications should be deemed unconstitutional, or alternatively that an indigency standard should be raised. Ignoring temporarily that Plaintiff generally spends over a hundred dollars per month at the commissary, often primarily on unhealthy food items, his complaint about indigent over-the-counter medication purchase requirements is still not cognizable. "Plaintiff does not have an Eighth Amendment right to the pain medication of his choice and he certainly does not have a right to receive such pain medication in precisely the manner he chooses. *See Thomas v. Coble*, 55 F. App'x 748, 749 (6th Cir. 2003) (holding that plaintiff and defendant "clearly disagreed over the preferred medication to treat [defendant]'s pain" but that "this difference of opinion does not support an Eighth Amendment claim")." *Slattery v. Mohr*, 2012 U.S. Dist. LEXIS 99568 *, 2012 WL 2931131 (S.D. Ohio July 17, 2012). Additionally, "Plaintiff does not have an Eighth Amendment right to receive free medical care regardless of his financial circumstances. *Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir. 1997) ("If a prisoner is able to pay for medical care, requiring such payment is not 'deliberate indifference to serious medical needs.'")." *Id.* at, 2012 U.S. Dist. LEXIS 99568 *, 2012 WL 2931131 (S.D. Ohio July 17, 2012). Requiring inmates to pay for medication, including over the counter medication, does not violate the Eighth Amendment.

action: September 2, 2009 through January 18, 2011, again from April 6, 2011 through March 27, 2012, again September 13, 2012 through March 14, 2013, and again July 11, 2014 through December 23, 2014. (Def. Ex. E, Plaintiff's Institutional Movement History). Thus, claims 2, 4, and 5, are all excluded from this lawsuit. Additionally, Plaintiff's claims 1 and 3 are barred by the limitations period. When a § 1983 action is brought in Ohio, federal courts apply the two-year statute of limitations found in Ohio Rev. Code § 2305.10. *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989). "Case law is clear that courts apply a state's personal injury statute of limitations for § 1983 claims. In Ohio, the statute of limitations for personal injury claims is two years." *North v. City of Cuyahoga*, No. 1:15-cv-1124, 2017 U.S. Dist. LEXIS 112301 *18 - 19, 2017 WL 3065502 * (N.D. Ohio, July 19, 2017) (citing *Gates v. Precision Post. Co.*, 74 Ohio St. 3d 439 (1996), *Browning v. Pendleton*, 869 F.2d 989, 989 (6th Cir. 1989))

The only claims currently before the Court against Dr. Eddy are number 6 and 7. (*See* footnote 5). Those claims were previously addressed in *Brown I* and will not be addressed further except to say they are without merit. *See Brown I*,1:07-cv-463. See also Doc. 170, Def. Ex. B, Plaintiff's Deposition, pp.35-36, 53, 56).

*11. Defendant Hunt*

On December 7, 2011, Plaintiff filed a grievance stating that Defendant Hunt disarranged his legal documents, making it impossible for him to file a response to Defendant's Motion for Summary Judgment in *Brown v. Voorhies*, 2:07-cv-00013. The record indicates however, that following the alleged incident, the court granted two motions to extend time to permit the plaintiff to file a response. (See *Brown v. Voorhies*, 2:07-cv-00013 Docs. 278, 288). Additionally, Plaintiff's claims related to any delay caused by Defendants are barred by preclusion, because they were addressed in that case. (See *Brown v. Voorhies*, 2:07-cv-013 Doc. 272, 277). According to Doc. 277, the taking of Plaintiff's property was not done in retaliation because under ODRC policy and events occurring at SOCF at the time of the incident, Plaintiff was not permitted to store his documents in his cell for security reasons. (See *Brown v. Voorhies*, 2:2007-cv-00013 Doc #277). Further, Plaintiff filed a number of other motions during this alleged time and raised the issues he now raises here. (*See*, e.g., *Brown v. Voorhies*, 2:07-cv-00013, Docs. 272, 291, 295, 298). Thus, Hunt is entitled to judgment.

12. *Defendant Green*

Plaintiff claims that Green, the Warden's designee at SOCF, submitted perjured affidavits in his state public records. (Doc. 170, Ex. B, Plaintiff's dep. at 120-123). Notably, Plaintiff filed a state mandamus action for public records that was ultimately dismissed

because he failed to comply with state filing requirements. (*See State ex rel. Brown v. ODRC*, No. 10AP-332, 2011-Ohio-5401, 2011 Ohio App. LEXIS 4409, [10th Dist. Court of Appeals, Franklin County Ohio]).  Defendant Green was required to provide an affidavit of his prior civil actions and an inmate balance sheet.  Plaintiff has provided no evidence that the information contained in Defendant Green's affidavit was false and/or that Defendant Green violated his constitutional rights. Accordingly, Defendant Green is entitled to judgment as a matter of law.

*13. Defendants Cadogan, Mahlman, and Morgan*

As outlined above, Plaintiff's claims against these Defendants are premised on either their capacity in responding to grievance requests or based on their supervisory roles. Such claims fail as a matter of law.

Prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged [unconstitutional] behavior'" cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Nor does a prison official's alleged failure to adequately investigate claims of misconduct rise to the level of "encouragement" that would make the official liable for such misconduct. *Knop v. Johnson*, 977 F.2d 996, 1014 (6th Cir. 1992); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

*14. Conditions of confinement*

Additionally, Plaintiff's complaint details general complaints about the totality of his prison conditions.  As noted by Defendants, Plaintiff is required to explain how a specific condition at a specific time affected one of his constitutional rights.  Here, Plaintiff simply details dozens of unsupported complaints of conditions spanning the entirety of his

confinement. To the extent such claims are cognizable and or supported by the evidence of record (which they are not), they must fail as a matter of law. *See Berryman v. Johnson*, 1991 U.S. App. LEXIS 18816 *26 – 29. (6th Cir. 1991) ("Courts may not find Eighth Amendment violations based on the 'totality of conditions' at a prison.").

C. *Qualified Immunity*

In their last argument in favor of summary judgment, Defendants collectively assert that they are entitled to qualified immunity on claims filed against them in their individual capacities because they acted reasonably under the circumstances. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200–201 (2001).

The doctrine of qualified immunity is intended to balance the following competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009). Qualified immunity "'gives ample room for mistaken judgments by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)). See also *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008). Qualified immunity applies regardless of whether the official's error was a mistake

of law or a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson*, 555 U.S. at 231.

Here, the record evidence clearly established that any use of force by Defendants was "applied in a good-faith effort to maintain or restore discipline" and not "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. The record further establishes that Defendants were not deliberately indifferent to his serious medical needs. As such, Plaintiff has failed to establish that he suffered a deprivation of any clearly established statutory or constitutional right that a reasonable official would understand violated the same. Therefore, the Defendants are immune from Plaintiff's civil rights claims and are entitled to judgment as a matter of law.[6]

### IV. Conclusion

For these reasons, is therefore **RECOMMENDED** that Defendants' motion for summary judgment (Doc. 170) be **GRANTED**, all remaining pending motions (Docs. 167-169, 179, 180, 183-185, 187, 189, 195, 196, 199, 200) be **DENIED as MOOT**; and this case be **CLOSED**.

*/s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

---

[6] Additionally, the attorney Defendants are also immune from suit. *See* 42 U.S.C.A. § 1983; *Davis v. Finnegan*, 26 F. App'x 408 (6th Cir. 2001) (Prosecuting attorneys enjoyed absolute immunity from suit for money damages under § 1983 for acts performed as prosecutors. *See also Polk County v. Dodson,* 454 U.S. 312, 325 (1981) (Plaintiff's attorneys are likewise immune from suit for their actions in defending him).

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

STEVEN BROWN,                                    Civil Action No. 1:12-cv-583

     Plaintiff,                                   Barrett, J.
                                                 Bowman, M.J

    vs.

DIRECTOR MOHR, *et al.*,

    Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).